RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
8/3/15
yt

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| DUSTIN BLAKE WRIGHT | CIVIL ACTION NO. 2:13-0365 |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| EXCEL PARALUBES, INC., ET AL | MAG. JUDGE KAY |

### MEMORANDUM RULING

Before the court is "Airgas On-Site Safety Services' Motion for Summary Judgment" ( R. #64) wherein the mover seeks to be dismissed from the instant lawsuit pursuant to Federal Rule of Civil Procedure 56.

### STATEMENT OF FACTS

On February 24, 2012, Plaintiff, Dustin Blake Wright, was performing maintenance and construction services in a vacuum tower during a turnaround at the Lake Charles refinery owned and operated by Conoco Phillips and Excel Paralubes.[1] At the relevant time period, Mr. Wright was an employee of Wyatt Field Services, Inc.[2] Also, during the relevant time period, Airgas On-Site Safety Services ("Airgas") provided air testing at the refinery for certain confined spaces.[3] Plaintiff disputes the fact that plaintiff's sole responsibility was air testing; plaintiff argues that on February 24, 2012, when Liz Powell signed a Confined Space Entry Permit, she

---

[1] R. #1-4, ¶ ¶ 3-4.
[2] Id.
[3] Airgas exhibit 2, Kimble depo. p. 31; Airgas exhibit 6, Vincent depo. p. 36.

1

was also indicating that it was safe to enter the space designated as Manway #2.[4] Ms. Powell was one of five (5) people to sign the Confined Space Permit.

On that date, at approximately 8:00 a.m., Mr. Wright began working in the Manway #2.[5] Sometime after 3:00 p.m., Mr. Wright and co-worker, Derrick Johnson, began arc gouging to cut I-beams. Slag from the arc gouging fell onto a fire blanket causing a fire.[6] Mr. Wright attempted to stomp out the fire which resulted in his clothes catching fire and causing him injury to one leg and both hands.[7]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[8] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[9] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[10] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[11] Once the

---

[4] Statement of Fact #4.
[5] Airgas exhibit 3.
[6] Airgas exhibit 1, Wright depo. pp. 175-178.
[7] Id.
[8] Fed. R. Civ. P. 56(c).
[9] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
[10] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).
[11] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[12] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[13] There is no genuine issue of material fact if, viewing the evidence in the light more favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[14] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.[15]

## **LAW AND ANALYSIS**

Defendant, Airgas, asserts that it was responsible solely for monitoring the air quality of the workplace. Airgas then maintains that it must be dismissed from the instant lawsuit because plaintiff cannot establish a nexus between Airgas' responsibility of air monitoring and the blanket that caught on fire. In other words, Airgas posits that plaintiff's injury is not causally connected to Airgas' monitoring of air quality. Airgas contends that plaintiff cannot prove two essential elements of his claim under the duty-risk tort analysis: (1) that Airgas failed to conform to the appropriate standard of care in its air testing activities, and (2) Airgas' alleged conduct was the legal cause of plaintiff's injuries.

On the morning of February 24, 2012, the day of the accident, Ms. Powell conducted an air sniff test for the subject tower and signed off on her portion of the confined space permit.

---

[12] Anderson, 477 U.S. at 249.
[13] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[14] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[15] Anderson, 477 U.S. at 249-50.

3

Ms. Powell was one of five (5) signatories on the permit issued by Conoco.[16] Airgas has submitted summary judgment testimony to establish that that her sole responsibility was to test the air quality and not to test for oil residue. Wyatt Field Services foreman, Jody Kimble, testified that Ms. Powell's role was to test air quality, and further that Ms. Powell was not responsible for testing oil residue.[17]

Plaintiff contends that Airgas was responsible for more than merely monitoring air quality at the plant; specifically, Airgas was contracted to make sure it was safe to perform the work that was taking place in the vacuum tower where plaintiff was burned. Plaintiff argues that had Ms. Powell, the safety representative for the project, known what she was doing and performed her duties appropriately, there would have been no fire and plaintiff would not have been injured.

Plaintiff relies on the deposition testimony of Ms. Powell who testified that her duties included "checking for hazards that others might not see… making sure they go home."[18] Plaintiff also relies on the permit signed by Ms. Powell. When Ms. Powell, the Safety Department Representative classified the Manway #2 space, she checked off "Declassified Confined Space", which certified that the space "[d]oes not contain hazardous atmosphere, potential engulfment, trapping internal configuration, or any serious safety or health hazard".[19] Ms. Powell testified that she did not check that box, rather Mr. McMullen did. She further testified that it was not her "decision to declassify it, because under No. 5, my signature is

---

[16] Airgas exhibit 3.
[17] Airgas exhibit 2, Jody Kimble depo., pp. 134, 136, 143.
[18] Plaintiff's exhibit (not identified), Liz Powell dep. P. 12, lines 7-12, R. #74-9.
[19] Plaintiff's exhibit 7.

4

classifying it with a date."[20] Plaintiff relies on the testimony of John McMullen, an employee/operator of ConocoPhillips, to dispute this.

Plaintiff also relies on portions of Ms. Powell's testimony wherein she could not interpret Paragraph 8 of the Confined Space Permit and the notation, "equipment contained H/C" or section 8 of the permit which states "contain residual" and N/A is checked off.[21] Ms. Powell explained that she did not write that, but that the operator would have been responsible for that particular portion of the permit.[22]

Ms. Powell testified that she could not see anything in the manway.[23] Mr. McMullen, who performed the clean out and preparation of the vacuum tower,[24] testified that when Ms. Powell signed off on Part 4, she was concluding that there was no serious safety or health hazard, implying that "she looked inside, she investigated and said it was clear to go."[25] Even though Ms. Powell testified that she was not required to enter the manway, Mr. McMullen testified that she was required to inspect the inside of the tower and look for anything that might have to do with safety.[26]

Plaintiff submits the Investigation Report[27] of the accident which concluded that the arc gouging process ignited the residual fuel oil on the fire blanket. The Report further noted that the pre-job inspection did not reveal the existence of residual lube oil on tower internals prior

---

[20] Powell depo. p. 25.
[21] (Hydrocarbons); Powell depo. pp. 25-26.
[22] Id.
[23] Id., p. 33.
[24] Plaintiff's exhibit 30.
[25] Plaintiff's exhibit (not identified), McMullen depo. p. 34, R. #74-9.
[26] Id., McMullen depo. p. 77.
[27] Plaintiff's exhibit 28.

5

to the fire work.[28] Airgas contends that the Investigative Report is hearsay and thus not admissible as summary judgment evidence. While that may be true, there is really no dispute that the fire blanket caught on fire because of residual oil in the tower.

Next, plaintiff submits Conoco/Phillips' Policies and Procedures Manual which applies to all contractor personnel at the facility,[29] specifically section 3.2 ("Hot/Fire Work") which outlines the duties of the Safety Representative and provides as follows:

> **Safety Representatives** provide guidance for the planning and safe execution of Hot/Fire Work at this site. They conduct assessments to validate that areas and equipment are prepared adequately and proper control measures are in place while the work is taking place. Safety department approval is not required to conduct line breaks or Hot Work. Gas testing and authorization by a Safety Representative is required for:
>
> Fire Work
>
> Initial Confined Space Entry
>
> as requested by operations maintenance or supervision

Again, Airgas contends that the Policies and Procedure Manual is hearsay and therefore cannot be relied upon by the court as summary judgment evidence. However, we place no reliance at this point on the Manual in deciding this motion.

In its answers to interrogatories[30] Conoco Phillips/Excel Paralubes, answers that "[once] Oilind Safety Services [Airgas] employees/representatives arrived at the project in question, they were responsible for atmospheric testing and maintaining and testing for full hazards, . . .

---

[28] Id.
[29] Plaintiff's exhibit 29.
[30] Plaintiff's exhibit 30.

ensuring full compliance with the Confined Space Entry Permit, Job Safety Analysis (JSA), and Job Safety Plan (JSP)."[31] Ms. Powell testified that "I was there and responsible for atmospheric testings and to identify any hazards that could put anybody in harms' way.[32] Further, Conoco/Phillips, in its answers to interrogatories responded that Airgas was responsible for checking for the accumulation of potentially combustible materials.[33]

The court notes that the Confined Space Entry permit provides the following definition:

> **Declassified Confined Space** – A space that meets the criteria of a Confined Space, but atmospheric testing and internal inspection reveal that it does not contain any of the elements that would qualify it as a Hazardous Confined Space. Note: All Confined Spaces are hazardous until declassified by a Safety Representative.[34]

Hazardous Confined Space is defined as:

> A space meeting the definition of a confined space and also contains **one or more** of the following:
>
> 1. Contains or has a potential to contain a Hazardous Atmosphere;
> 2. Contains a material that has the potential for engulfing an entrant:
> 3. Has an Internal configuration such that an entrant could be trapped or asphyxiated by inwardly converging walls or by a floor which slopes downward and tapers to a smaller cross-section; **OR**
> 4. Contains any other recognized serious safety or health hazard (falls, electrocution, lacerations agitators, fans, etc.)

---

[31] Id., Answer to Interrogatory No. 1, R. #74-8.
[32] Powell depo. P. 59, lines 15-17.
[33] Id. Answer to Interrogatory No. 8.
[34] Plaintiff's exhibit 3. p. 2. R. #81-5.

Based on the summary judgment evidence presented by plaintiff, the court finds that there is a genuine issue of material fact for trial as to the potential liability of defendant, Airgas. To clarify, the court finds there a genuine issue of material fact as to the scope of Liz Powell's duty as a Safety Representative, and whether or not that included more than just air quality monitoring.

## **CONCLUSION**

For the reasons set forth above the motion for summary judgment filed by defendant, Airgas, will be denied.

**THUS DONE AND SIGNED** in chambers on this ___3rd___ day of August, 2015.

JUDGE JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE