RECEIVED
JAN 31 2017
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| **DUSTIN BLAKE WRIGHT** | **CIVIL ACTION NO. 2:13-0365** |
| **VERSUS** | **JUDGE JAMES T. TRIMBLE, JR.** |
| **REVCO INDUSTRIES INC., ET AL** | **MAG. JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment" (R. #100) filed by Defendant, International Enviroguard, Inc. ("Enviroguard"), who moves for summary judgment on the grounds that there are no genuine issues of material fact in dispute and Enviroguard is entitled to judgment as a matter of law. Enviroguard maintains that Plaintiff is unable to meet his requisite burden of proof for his claim that the product manufactured by Enviroguard is unreasonably dangerous under the Louisiana Product Liability Act.[1]

## FACTUAL STATEMENT

Plaintiff, Dustin Wright, an employee of Wyatt Field Service Company ("Wyatt"), was injured on 2/24/2012 in an industrial fire at a refinery operated by ConocoPhillips Company, Inc. and Excel Paralubes, Inc. ("Conoco/Excel"). Conoco/Excel hired Wyatt, Mr. Wright's employer, to perform demolition and reconstruction work in a vacuum tower. Wyatt was cutting and removing steel beams from the inner compartments of the tower at the time of Plaintiff's accident.

The demolition was performed by a violent and destructive process known as air carbon arc gouging, which heats metal to the point that it becomes hot molten slag. The slag can rise to

---

[1] La. R. S. § 9:2800.51 *et seq.*

a temperature of thousands of degrees; this process generates fire, sparks and molten metal which is ejected over a broad area.

As a safety precaution, and prior to Wyatt performing the work, Conoco/Excel drained the tower of flammable oil, although there is some evidence to suggest that not all of the flammable oil was removed. Conoco/Excel hired Defendant, Airgas Onsite Safety Services ("Airgas") to insure that explosive gases were not present during the demolition and construction.

Wyatt's employees wore several layers of personal protective clothing while on the job. First, over the direct clothing (blue jeans and shirt), was a full length flame-resistant cloth coverall made of flame-resistant fibers which diminishes after 50 laundering cycles. Worn over these coveralls was a disposable outer Pyroguard® FR garment manufactured by Enviroguard. This outer garment was a disposable, one-time use garment manufactured to be worn over the coveralls to extend the life of the coveralls by protecting it from excessive exposure to dirt, grease, grime and chemicals. The outer garment is designed for only a few hours of work-life, and is discarded and replaced with a new clean set possibly multiple times daily. The outer garment had a warning label which states that it should not be used for primary fire protection and to "**AVOID CONTACT WITH OPEN FLAME.**"[2]

Enviroguard makes no express warranty. The garment label states that Enviroguard "makes no warranty or claims with respect to specific applications. The end user is responsible for selecting the appropriate garment for use. Improper use may result in injury or death."[3]

---

[2] Enviroguard exhibit 18; Exhibit 9, Declaration of Enviroguard President Gary Cox.
[3] Id.

On February 24, 2012, Mr. Wright was assigned to assist Wyatt welder, Derrick Johnson, with the removal of steel beams within the tower using the air carbon arc gouging machine. The arc gouging machine was "blowing fire" and "threw a lot of flames out." A few small fires erupted on the fire blanket which Mr. Wright stomped out. A large piece of slag then fell on the fire blanket, creating another fire. Mr. Wright contends the fire was started when sparks/fire/slag from the air gouging machine ignited oil residue on the fire blanket that was left in the compartment by Conoco/Excel. Mr. Wright was injured while trying to put out the fire by stomping on it. While there is evidence that Mr. Johnson blew the fire and fire blanket onto Mr. Wright's legs with the arc gouger in an attempt to extinguish the fire, this is disputed by both Mr. Wright and Mr. Johnson's recent deposition testimony.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[4] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[5] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[6] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the

---

[4] Fed. R. Civ. P. 56(c).
[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
[6] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

3

absence of evidence supporting the non-moving party's claim."[7] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[8] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[9] There is no genuine issue of material fact if, viewing the evidence in the light more favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[10] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.[11]

## LAW AND ANALYSIS

Under the LPLA, a manufacturer of a product "shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant..."[12] The LPLA requires a plaintiff to establish the following four elements:

> (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.[13]

---

[7] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).
[8] Anderson, 477 U.S. at 249.
[9] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[10] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[11] Anderson, 477 U.S. at 249-50.
[12] La. R.S. 9:2800.54(A).
[13] Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 261 (5th Cir. 2002).

Under the Act, a manufacturer can only be liable for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product.[14] The plaintiff has the burden of proving causation (as well as an unreasonably dangerous condition), and a plaintiff must prove not only causation in fact, but also that the product defect was the most probable cause of injury.[15] Thus, a manufacturer is not liable for damages brought about by an occurrence of a separate, independent, or superseding cause.[16]

Enviroguard maintains that the claims made against it must be dismissed because plaintiff has no proof that the Pyroguard® FR garment is unreasonably dangerous under the LPLA. Enviroguard asserts that its garment, which is fire retardant, not fire proof, is designed and constructed to protect the inner primary garments from excessive exposure to dirt, grease, oil and chemicals thus extending the life of the primary inner apparel.

Enviroguard argues that Mr. Wright has failed to establish that the garment was unreasonably dangerous, and that the absence of an expert to prove causation is fatal to his claim. Enviroguard relies on several cases which ruled that it was not possible to show a product was defective without an expert.[17]

---

[14] La. 9:2800.54(A).
[15] 9:2800.54(D); Wheat v. Pfizer, Inc.,31 F.3d 340, 342 (5th Cir. 1994).
[16] Masters v. Courtesy Ford Co., 758 So.2d 171, 192, judgment vacated on other grounds, 765 So.2d 1055 (La. 6/30/00).
[17] Broussard v. Proctor and Gamble, Co., 463 F.Supp.2d 596, 611 (W.D. La. 2006); (an unreasonably dangerous design will not be presumed simply because injury occurred; rather the plaintiff must come forward with scientifically viable evidence to show that an alternative design would have prevented her injuries); McCarthy v. Danek Medical, Inc., 65 F.Supp. 2d 410, 412 ("Plaintiff in this instance has presented no expert evidence to support a claim…. Louisiana law does not allow a fact finder to presume an unreasonably dangerous design solely from the fact that injury occurred. Without expert or technical evidence to support the contention that the design was defective or to establish an alternative design, plaintiff has failed to create an issue of fact to be left to a jury."); Broussard v.

Mr. Wright relies solely on photographs of the inner garment (coveralls) and the outer Pyroguard® FR garment. The court agrees with Enviroguard that this is insufficient evidence to establish that the garment was unreasonably dangerous and is fatal to Mr. Wright's claims against this defendant.

### CONCLUSION

For the reasons set forth above, the motion for summary judgment will be granted dismissing with prejudice plaintiff's claims against Defendant, Enviroguard.

The Court determines that there is no just reason for delay and will direct entry of final judgment under Rule 54(b) of the Federal Rules of Civil Procedure.

**THUS DONE AND SIGNED** in Alexandria, Louisiana on this 31st day of January, 2017.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

Pennsylvania Millers Mutual Ins. Co. 406 So.2d 574, 576 (La. 1982)("Plaintiff was the only witness to testify on her behalf. She offered no expert testimony to corroborate her theory that the tire failed due to defect.").